UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF KENTUCKY
COVINGTON DIVISION

IN RE:

**LARRY ARRASMITH**

**DEBTOR-IN-POSSESSION**

CASE NO.   11-22783

**CHAPTER 12**
**Judge Tracey N. Wise**

## MODIFIED CHAPTER 12 PLAN OF REORGANIZATION

The Debtor, Larry W. Arrasmith, by and through counsel, and proposes the following Plan of Reorganization to his creditors, pursuant to 11 U.S.C. § 1221 AND 1223;

### ARTICLE I
### GENERAL OVERVIEW OF THE PLAN

The Plan provides that the Debtor shall submit all of his Net Disposable Income, as defined herein, from his unencumbered farming operations, including distributions made to him from an LLC, in which the Debtor is a member, that is a dairy operation and any other farm income; any government farm payments, if any; and other income derived from the Debtor's employment to the supervision or control of the Chapter 12 Trustee for a period of three (3) years, beginning on the date of filing. Net Disposable Income shall mean income from all of the sources above, after payment of all farming and living expenses and payments to the Debtor's secured creditors as set forth herein. A summary of the Debtor's encumbered assets, the value thereof, and the secured liabilities is described herein.

## ARTICLE II
## TREATMENT OF UNCLASSIFIED CLAIMS

Unclassified Claims consist of Allowed Administrative Claims, which shall be paid from the Debtors' operations and/or Net Disposable Income, as set forth herein.

All fees payable to the Chapter 12 Trustee shall be paid from the Debtor's Net Disposable Income as defined in Article I.

An Allowed Administrative Claim, as defined in 11 U.S.C. § 503(b), if any, shall be paid in full, without interest, either in cash at confirmation, unless otherwise agreed upon by the parties, or when due in the ordinary course.

Professional Fees, including the fees to Debtor's Counsel, namely Matthew T. Sanning and Michael L. Baker, shall be paid by the Debtor, or by the Trustee, as soon as practical, after notice and hearing, and upon approval of this Court. Allowed Professional Fees shall be satisfied by payment by the Chapter 12 Trustee from the Net Disposable Income. Post confirmation Professional Fees shall not require Court approval but shall be disclosed in accordance with 11 U.S.C. § 329.

## ARTICLE III
## CLASSIFICATION AND TREATMENT OF CLAIMS AND INTERESTS

11 U.S.C. § 1222 requires that a plan of reorganization classify the claims of Debtor's creditors. Said provision also requires that a plan of reorganization provide for the same treatment of each class of claims, unless a claimant agrees to another treatment. The classifications of the Debtor's claims are as follows:

1.  Unclassified claims as described in the proceeding paragraph, including Professional Fees and Chapter 12 Trustee's fees.

2. The secured claim of the Bank of Maysville who holds a mortgage on real estate described in Mason County, in Deed Book 318, page 704; in Mason County, in Deed Book 318, page 436; and in Mason County, in Deed Book 319, page 334, consisting of 119.49 acres, more or less, including two tobacco barns and a shed. The value of the Debtor's real estate that is encumbered by the mortgage to the Bank of Maysville is in excess of the amount owed to the Bank of Maysville who filed a proof of claim in the amount of $244,623.48. The Claim of the Bank of Maysville shall be treated as fully secured.

3. The secured claim of Peoples Bank of Kentucky, Inc., who holds a mortgage on 318 acres in Mason County, Kentucky, as described in Deed Book 283, page 625; in Deed Book 269, page 220; and in Deed Book 259, page 531, which also contains two (2) houses, including the Debtor's residence, and four (4) barns, and property located in Fleming County, as described in Deed Book 184, page 174, which consists of 114 acres, more or less, including a tobacco barn and a 40 foot by 400 foot storage building. In addition, Peoples Bank holds a secondary lien on certain farm equipment. The value of the Debtor's interest in this real estate is in excess of that amount owed to Peoples Bank of Kentucky, Inc., who has filed a secured proof of claim in the amount of $1,140,368.86. The Claim of Peoples Bank of Kentucky, Inc., shall be treated as fully secured.

4. The secured Claim of Regions Bank, who holds a mortgage on property located at 5616 24th Avenue, Palmetto, Florida, which consists of a first mortgage on the subject property. The value of said property is unknown. The Debtor shall make no payment in the Plan to Regions Bank on said property and shall seek (and has been seeking) a sale of the subject property.

5. The secured Claim of First America Bank, who holds a second mortgage on the property located at 5616 24th Avenue, Palmetto, Florida. The Debtor does not believe that the amount owed on the first mortgage to Regions Bank is less than the value of the subject real estate.

This claim shall not be paid as secure in the Plan, but the Claimant shall be allowed to enforce its mortgage, and any deficiency shall be allowed as an unsecured claim.

6. The Claim of Gold Coast Door and Trim, Inc., who holds a Judgment Lien the real estate located at 5616 24th Avenue, Palmetto, Florida. Said Claim shall be treated as unsecured, as the value of the subject property is less than the amount owed on the mortgages that precede its filing of the Judgment Lien asserted by Gold Coast Door and Trim, Inc. The Debtor finds no record that Gold Coast Door and Trim, Inc., has filed a proof of claim. Therefore, the Claim shall be treated as an untimely claim and shall receive no distribution from the Chapter 12 proceeds. Gold Coast Door and Trim, Inc., shall be required, upon confirmation, to release its Judgment Lien on the subject real estate located at 5616 24th Avenue, Palmetto, Florida.

7. The secured Claim of Louis Bramel (now deceased), his heirs, successors and assigns, who holds a first mortgage on real estate located in Mason County, Kentucky, which consists of 122 acres, including two (2) barns and a two-story house, which the Debtor has purchased on a land contract. The value of the subject property is in excess of the amount owed to Louis Bramel, who is owed approximately the sum of $232,000.00. The Claim of Louis Bramel shall be treated as fully secured.

8. Property taxes owed on the real estate in Mason County, Kentucky. Said tax claims shall be treated as fully secured and shall be paid. The amount owed on the taxes is unknown but shall be paid by the Trustee through payments made as described in Article I.

9. The secured Claim of Agco Finance LLC, who holds a lien on approximately 14 pieces of farm equipment, as described in Schedule "B" of the Bankruptcy Petition. The Debtor believes that the value of the collateral, the farm equipment as described, is in excess of the amount

owed to Agco Finance LLC, who has filed a secured proof of claim in the amount of $89,148.53. The Claim of Agco Finance LLC, shall be treated as fully secured.

10. The secured Claim of Dutch Ishmael Chevrolet who holds a lien on a 2009 Chevrolet Avalanche, used and driven by the Debtor. The Debtor believes that the value of the 2009 Chevrolet Avalanche is in excess of the amount owed to Dutch Ishmael Chevrolet. Dutch Ishmael Chevrolet has filed a secured claim in the amount of $22,328.62. Dutch Ishmael Chevrolet is secured by a lien notation on the title of the vehicle, and through an assignment of tobacco insurance proceeds, which the Debtor expects to receive, and shall be paid in full from the disbursement made on those proceeds as described herein. The Claim of Dutch Ishmael Chevrolet is a fully secured claim.

11. The secured Claim of Southern States who holds a lien through an assignment of tobacco insurance proceeds that the Debtor expects to receive during the course of the Plan. Southern States has filed a secured claim in the amount of $117,751.45. The Debtor has produced an agreement that the amount to be accepted by Southern States is $69,988.43. To the extent that the insurance proceeds disburse during the course of the Plan shall pay this claim in full, as the Debtor believes it will, Southern States is a fully secured claim. To the extent that the insurance proceeds may not pay the Claim in full, the balance, if any, shall be treated as an unsecured claim.

12. The secured Claim of Tobaccorp, Inc, who holds a lien on tobacco insurance proceeds, which the Debtor expects to receive during the life of the Plan. Tobaccorp, Inc, has filed a secured claim in the amount of $84,736.68. The Debtor believes that the insurance proceeds received will be sufficient to pay the secured Claim of Tobaccorp, Inc, in full. To the extent that the insurance proceeds would not be sufficient to pay said Claim in full, the balance, if any, would be treated as a general unsecured claim.

5

13. The secured Claim of Arch Johnson who holds an assignment on tobacco insurance proceeds in the approximate amount of $50,000.00. The Debtor believes that the tobacco insurance proceeds will be sufficient to pay the secured claim of Arch Johnson in full. To the extent that said Claim, if any, is not fully satisfied by the tobacco insurance proceeds, the Claim of Arch Johnson shall be treated as an unsecured claim.

14. The secured Claim of Great American Insurance Group who is owed reimbursement of the crop insurance in the approximate amount of $14,381.00. When a disbursement for the tobacco insurance proceeds is made, Great American is the issuer and is entitled under Federal Crop Insurance regulations to retain and deduct from the insurance proceeds the amount of a premium in the amount of $14,381.00, more or less. Great American Insurance Group has not filed a proof of claim and, therefore, would not partake in any distribution from the Trustee.

15. A Class of any pre-petition, priority claims that are entitled to enjoy priority as defined in § 507. The Debtor is presently unaware of any said claim, and no proofs of claim have been filed by any party that would enjoy priority under 11 U.S.C. § 507. Should any claims exist, said claims shall be paid by the Chapter 12 Trustee from the Debtor's Net Disposable Income. Said claims shall be paid before any other unsecured claim shall be paid, save those claims described in the previous Article.

16. Allowed unsecured claims. This Class consists of all allowed unsecured claims who have filed timely proofs of claims, which shall be paid by the Chapter 12 Trustee, pro rata, from Net Disposable Income, if any, on or before the anniversary of the effective date of the Debtor's Chapter 12 Plan of Reorganization.

**ARTICLE IV**

The Debtor hereby submits his Net Disposable Income, as defined above, to the supervision and control of the Chapter 12 Trustee for a period of three (3) years, or until unsecured claims are paid in full, whichever occurs first. The Debtor's Unencumbered Funds shall be derived from the unencumbered proceeds from the Debtor's current and future farming operations; miscellaneous farm income, including tobacco income; and any other income derived from Debtor's employment or other benefit.

The Debtor is engaged in various types of farming operations. The Debtor is a member of U.S.A.-KY, LLC, which owns two pieces of real estate and approximately 201 head of cattle, which is set up as a dairy farm operation in Mason County, Kentucky. The dairy operation commenced in approximately April or May of 2011 and has, over the last 12 months, increased the size of the herd from 13 head of cattle in April of 2011 to approximately 201 head of cattle presently. The dairy operation hopes to continue to increase the size of the herd. The milk proceeds derived from the dairy operation presently services the debt that encumbers the dairy operations, including mortgages on the real estate owned by the LLC and payment for acquired cattle, as well as the purchase of feed, veterinary services, labor and other services necessary for the operation of the dairy operation. Various assignments from the milk proceeds are made to service those debts. The Debtor also receives a stipend from the dairy, which he uses for his living expenses. The Debtor also is the sole owner of Larry Arrasmith, Inc., which is a construction and contracting business that operates in the state of Florida. The business is currently not generating any large volume of business. It is not expected to generate income above and beyond its operating expenses for the foreseeable future, given the economic climate in the state of Florida.

The Debtor also expects to receive, from Great American Insurance Company, insurance

proceeds for the 2008 and 2009 tobacco crops. The 2008 insurance proceeds that are being contested is approximately $196,000.00. The 2009 crop insurance proceeds total approximately $84,000.00. These figures are net figures, after deduction of crop insurance premiums. The Debtor has been engaged in a lengthy appeal process with the United States and has recently received a favorable ruling with regard to the 2009 tobacco crop. Additional documentation must be supplied, but the Debtor also expects a favorable result for the 2008 tobacco crop. From the insurance proceeds, the Debtor must pay various secured claims. These claims include those of Dutch Ishmael Chevrolet on a claim that is in the amount of $22,328.62; Southern States in the amount of $69,988.43; Tobaccorp, Inc., in the amount of $84,736.68; and Arch Johnson in the approximate $50,000.00. Any proceeds remaining after the payment of those parties that have valid assignments shall be considered Net Disposable Income and turned over to the Chapter 12 Trustee, less withholding sums for acquisition, planting and other tasks associated with the production of the 2012 tobacco crop.

The Debtors other principal farming source of income shall be the 2012 and thereafter annual tobacco crops and/or relevant crop insurance.. The Debtor expects to grow 120,000 – 150,000 pounds of tobacco each and every year. After payment of the expenses necessary to acquire, plant, harvest and sell the tobacco crops, the Debtor expects to be able to turnover proceeds to the Chapter 12 Trustee as part of his Net Disposable Income to pay those claims as set forth in this Plan. During the life of the Plan, the payments on the various secured claims shall be paid by the Trustee. After the third year, the Debtor shall make the payments directly to the secured claimants in the amounts set forth herein. The payments to the secured creditors on the long term secured debt shall be made first the Trustee and then by the Debtor, as follows:

1. Peoples Bank of Kentucky, Inc. – The Debtor shall make annual payments on a balance of $1,140,368.86 at an interest rate of five (5 %) percent. The annual payment shall be amortized over 40 years. However, the mortgage shall mature on March 1, 2023. The Debtor shall divide the first payment, with the first payment in the amount of $28,827.05 being due on October 1, 2012, the second payment of $28,827.05 being due on March 1, 2013, and an annual payment in the amount of $57,615.41 being due on March 1 every year thereafter through March 1, 2023, with a balloon payment due on that date.

2. The Bank of Maysville – The Debtor shall make payments on a balance of $244,623.48 at an interest rate of five (5) percent. The Debtor shall divide the first payment, with the first payment in the amount of $12,814.25 being due on October 1, 2012, the second payment in the amount of $12,814.26 being due on March 1, 2013 and an annual payment in the amount of $25,628.51 being due on March 1 every year thereafter until said loan is paid in full on March 1, 2025. The annual payment shall be amortized over a period of 13 years.

3. Louis Bramel, his heirs, successors and assigns – The Debtor shall make annual payments on a balance of $232,000.00 at an interest rate of 4 percent. The annual payment shall be amortized over a period of 30 years. The first payment in the amount of $6,708.29 shall be due on October 1, 2012, the second payment of $6,708.29 due on March 1, 2013, and an annual payment in the amount of $13,416.58 shall be made no later than March 1each and every year thereafter, with the final payment due on March 1, 2042;

4. Agco Finance, LLC – The Debtor shall make semi-annual payments on a balance of $76,679.00 at an interest rate of five (5) percent. The first payment in the amount of $8,761.25 shall be due on October 1, 2012, the second payment in the amount of $8,761.25 shall be due on March 1, 2013, and each and every payment thereafter due on October 1 and March 1 thereafter, with the final payment due on March 1, 2017;

5. Dutch Ishmael Chevrolet – The Debtor shall pay said claim in the amount of $22,328.62 within ninety (90) days of the confirmation of the Plan. Upon receipt of funds from the crop insurance, the Debtor shall turn over the proceeds to the Trustee for disbursement as soon as practicable. In the event that payment is not made within 90 days of the Order of Confirmation, the automatic stay would be lifted to allow Dutch Ishmael Chevrolet to exercise its remedies at law. The Debtor firmly believes that the crop insurance will be received within that time frame and payment made.

6. The Debtor agrees to lift the automatic stay on the property located at 5616 24th Avenue, Palmetto, Florida, on the fifteenth day after the Order of Confirmation is entered. The creditors who hold liens on said property, including Regions Bank and First America Bank. shall receive no payment from the Trustee as a secured claimant, and may file an amended deficiency claim within 180 days of the date of confirmation to have a timely allowed unsecured claim.

7. The Debtor shall pay to the Trustee, no later than March 1, 2015, the amounts necessary to pay the Mason County property tax bills, or Fleming County tax bills on any property owned by the debtor, for any tax bill due and owing as of the time of the filing of the bankruptcy petition. Said claim shall bear interest at the rate of

twelve (12) percent in accordance with relevant Kentucky law. The Debtor shall provide to the Trustee the real party in interest for any relevant delinquent property tax bill along with the funds designated for payment, as set forth in the records of the Mason County, or Fleming County, Clerk.

9. After payment of administrative expenses and the payment to the secured creditors as described herein, any remaining funds shall be distributed by the Trustee to remaining creditors on or before March 31 of each and every year. The first payment to unsecured creditors shall be made after March 31, 2013; however, the Debtor shall not be required to pay the amounts necessary to meet liquidation value until the end of the third year, expected to be March 31, 2015. The Debtor is unable to state whether timely filed, allowed unsecured claims shall be paid in full during the Plan. The sale of any asset that is otherwise not exempt, and otherwise not secured, shall likewise be paid over to the Trustee for disbursement to unsecured creditors, or administrative claims as the case may be, during the life of the Plan.

The Debtor has received permission from the Court to sell real estate in Fleming County, that is more particularly described in Deed Book 277, page 99, for the sum of $20,000.00 [Doc. #38]. Said sale has not been consummated, but the proceeds shall be turned over to the Trustee, pending further orders of the Court.

## ARTICLE V
## ASSUMPTION OF EXECUTORY CONTRACTS

To the best of the Debtor's knowledge and belief no executory contracts or unexpired leases exist to which the Debtor is a party, except for the sale of the subject real estate in Fleming County, Kentucky, for $20,000.00, and the purchase of the farm from Louis Bramel, his heirs,

successors and assigns, as set forth in this Article. These contracts will be assumed subject to the modification that is set forth in this Plan.

## ARTICLE VI
## MODIFICATION OF PLAN AFTER CONFIRMATION

The Debtor may request the Court to modify the Plan, either before or after confirmation, in accordance with 11 U.S.C. § 1223 or § 1229.

## ARTICLE VII
## OBJECTIONS TO CLAIMS

Debtor reserves the right to file objections to claims after Confirmation.

## ARTICLE VIII
## PROHIBITION OF OFFSETS

No creditor, including secured creditors, may offset any funds due the Debtor, with prior motion and order allowing said offset from the Court during the operation of the Plan, except for Great American Insurance Company may retain its insurance premium when it disburses funds for the 2008 and 2009 insurance crop proceeds.

## ARTICLE IX
## AUTOMATIC STAY

Notwithstanding the entry of an order confirming the Plan, the automatic stay provided by 11 U.S.C. § 362 shall continued in effect as to all property retained by the Debtor until the Plan has been completed, terminated or a discharge entered, or an order entered by the Court lifting the automatic stay, whichever is earlier, unless otherwise directly lifted by express terms of this Plan. The automatic stay does not apply to any property given as collateral for post-confirmation operating loans, which may be approved by the Court.

## ARTICLE X

Except as provided in the Plan, the order confirming the Plan vests all property of the Estate in the Debtor.

The Court shall retain jurisdiction of the Debtor and his property for the term of the Plan.

The secured debt of any secured creditor may be further modified by agreement between the Debtors and said creditor without Court approval or upon application of the Debtor and approval by the Court for cause after notice to the subject secured creditor and after a hearing conducted by the Court.

## ARTICLE XI
## DISCHARGE

Upon the Debtor's compliance with the provisions of the Plan, for the term of the Plan, the Court shall enter a discharge, which shall discharge the Debtor from all claims provided for in the Plan, except as those provided under 11 U.S.C. § 1222(b)(5) and 11 U.S.C. § 523(a).

## ARTICLE XII

Except as otherwise expressly set forth herein, all creditors whose claims are treated as secured in this Plan shall retain liens on the collateral securing each respective claim until such claim are paid in full as provided by this Plan. Except as modified by the terms of this Plan, all documents evidencing indebtedness and security in favor of said creditor remain the same and are incorporated herein by reference as if more fully set forth in this Plan.

## ARTICLE XIII

The Trustee shall receive a commission not to exceed five (5) percent on all disbursements paid by him through the first three years of this Plan. In addition, for each year that the Trustee administers the Plan, The Debtor shall provide copies of his Federal and any relevant state income tax returns, with all supporting schedules and statements, including W-2s, if applicable, and the last payment advice, if any, for each relevant year. The Debtor shall also provide copies of any relevant entity tax return in which he owns an interest, including but not limited to, USA-KY, LLC.

Respectfully submitted,

*[signature]*
Larry W. Arrasmith


/s/Michael L. Baker
Michael L. Baker (02708)
ZIEGLER & SCHNEIDER, P.S.C.
541 Buttermilk Pike, Suite 500
P.O. Box 175710
Covington, KY 41017-5710
(859) 426-1300
Facsimile: (859) 426-0222
mbaker@zslaw.com
*Attorney for Larry W. Arrasmith*


/s/ Matthew T. Sanning
Matthew T. Sanning
224 Main Street

Augusta, KY  41002<br>
(606) 756-2066<br>
Facsimile:  (606) 756-2664<br>
mattsanning@windstreaml.net

## CERTIFICATION OF SERVICE

The undersigned hereby certifies that on this 3rd day of July, 2012, a copy of the foregoing was served either by regular U.S. mail, postage prepaid, or through electronic service, where possible, upon the following:

United States Trustee
100 East Vine Street
Suite 500
Lexington, KY  40507

Michael Litzinger
Chapter 12 Trustee
1890 Star Shoot Parkway
Suite 170, PMB 111
Lexington, KY  40509

Matthew T. Sanning
224 Main Street
Augusta, KY  41002

Larry Arrasmith
7414 Taylor Hill Road
Maysville, KY  41056

and to all parties as listed on the Debtor's Creditor Mailing Matrix and all parties receiving electronic notice via the Court's CM/ECF system.

/s/Michael L. Baker<br>
Michael L. Baker